*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

JUSTIN EDWARD DUHA,

        Defendant-Appellee.

FOR PUBLICATION
December 14, 2023
9:15 a.m.

No. 363115
Bay Circuit Court
LC No. 22-010286-FH

Before: REDFORD, P.J., and SHAPIRO and YATES, JJ.

SHAPIRO, J.

Defendant was charged with one count of possession of methamphetamine, MCL 333.7403(2)(b)(*i*), and one count of possession of less than 25 grams of a controlled substance, MCL 333.7403(2)(a)(*v*). The drugs were discovered when defendant's mother called 911 seeking medical assistance for her son, who she believed was overdosing. Defendant moved to dismiss the charges on the basis of Michigan's Good Samaritan law, MCL 333.7403(3)(a), and, after conducting an evidentiary hearing, the trial court agreed. As we find no error in the trial court's analysis of the statute and the circumstances of the case, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant has a history of drug abuse. According to her unrebutted testimony, on May 27, 2022, defendant's mother entered defendant's bedroom and found him unresponsive. Defendant's mother testified: "I just looked in there and checked on him. And he was not okay. He was unresponsive." She tried "to wake him up and shake him[,]" but defendant did not respond. Defendant's "eyes were open, and he just had little pins" and "his breathing was really, really slow." When defendant did not respond to the shaking, his mother began "hitting him in the chest" and "kept hitting him" for some time, but this also failed to rouse him. She testified that she "knew he was high, and [she] was afraid he was going to die." As a result, defendant's mother called 911 and emergency personnel were dispatched.

Several minutes after his mother called 911, but before help arrived, defendant regained consciousness and sat up, although his pupils remained pinpoint. A police lieutenant arrived before the medical personnel and recorded his observations in a report, i.e., that defendant had

"pinpoint" pupils, a "blank startled look upon his face," and was sweating. Defendant denied having taken any drugs, but admitted to ingesting alcohol. A bag containing fentanyl and methamphetamine was found about three or four feet away from defendant. The lieutenant testified that the only drug he knows of that causes pinpoint pupils are opioids, such as fentanyl. However, the lieutenant testified that other signs of overdose were not present, and defendant was able to answer the lieutenant's questions. The lieutenant concluded: "I can't say that he was under the influence of [fentanyl] or not," because the lieutenant did not perform his "entire proceeding" relevant to evaluating defendant for drug use.

The paramedics arrived several minutes after the lieutenant. The lieutenant testified that the paramedics evaluated defendant, taking his "blood pressure, pulse, [and] those kind of things." However, when offered further treatment or transport to the hospital, defendant declined.

Defendant was charged with one count of possession of methamphetamine and one count of possession of less than 25 grams of cocaine, heroin, or another narcotic. Defendant moved to dismiss the charges against him on the basis of the Good Samaritan law, MCL 333.7403(3)(a), which bars prosecution under certain circumstances. It reads, in pertinent part:

> (3) The following individuals are not in violation of this section:

> (a) *An individual* who seeks medical assistance[1] for himself or herself or *who requires medical assistance and is presented for assistance by another individual if he or she is incapacitated because of a drug overdose or other perceived medical emergency arising from the use of a controlled substance* or a controlled substance analogue that he or she possesses or possessed in an amount sufficient only for personal use *and the evidence of his or her violation of this section is obtained as a result of the individual's seeking or being presented for medical assistance.* [Emphasis added.]

Defendant argued that the statute applied to his case because the sole evidence of his guilt was obtained as a result of his mother's call to 911 after finding him in an incapacitated condition "because of a drug overdose or other perceived medical emergency" caused by use of a controlled substance. Defendant asserted the drugs were obtained solely as a result of his mother's call for medical assistance. The prosecution opposed, making two arguments. First, that defendant was under the influence of alcohol, not drugs, and so he could not have been suffering from a drug overdose. Second, that because defendant refused medical treatment beyond the initial evaluation of vital signs, MCL 333.7403(3)(a) was inapplicable.

---

[1] The phrase "seeks medical assistance" is defined as "reporting a drug overdose or other medical emergency to law enforcement, the 9-1-1 system, a poison control center, or a medical provider, or assisting someone in reporting a drug overdose or other medical emergency." MCL 333.7403(7)(b).

The trial court granted defendant's motion to dismiss the charges on several grounds. First, the court concluded that "it [was] uncontested that the amounts found were for personal use. Or [it had not] heard anything to the contrary[,]" and, therefore, the statute's requirement that the drugs were only for personal use was satisfied. The court noted that defendant denied taking drugs but found this denial was "untrue, and it was uttered in a context where one might well expect someone to say such a thing, even if it's untrue. There . . . were drugs found at the scene." The trial court further stated:

> Also, I believe the testimony that [defendant's mother], who said that when I called because I found that he was unresponsive, that he wouldn't answer my questions, he wouldn't respond to me at all, I hit him on the . . . chest, he wouldn't wake up. Reading the definition—or reading the *Meeker*[2] case, I think that clearly falls within the statute's term, incapacitated because of the drug overdose.

The trial court suppressed the evidence and dismissed the charges against defendant. The prosecution now appeals.

## II. ANALYSIS

The prosecution argues the trial court erred by dismissing defendant's charges because defendant did not ultimately require medical assistance due to a drug overdose. This argument is not, however, consistent with the language of the statute.[3]

As previously noted, MCL 333.7403(3)(a) states:

---

[2] *People v Meeker (On Remand)*, 340 Mich App 559; 986 NW2d 622 (2022).

[3] This Court reviews de novo the interpretation of a statute. *Meeker*, 340 Mich App at 563. However, this Court reviews for an abuse of discretion a trial court's decision on a motion to dismiss charges against a criminal defendant. *Id*. A trial court abuses its discretion when its "outcome falls outside the range of reasonable and principled outcomes." *Id*. Moreover, "[a] trial court necessarily abuses its discretion when it makes an error of law." *People v Everett*, 318 Mich App 511, 516; 899 NW2d 94 (2017). Additionally, this Court reviews for clear error the trial court's findings of fact. *Meeker*, 340 Mich App at 563. Clear error occurs "if, after a review of the record, this Court is left with a definite and firm conviction that a mistake was made." *Id*.

"The goal of statutory interpretation is to give effect to the Legislature's intent, which is most reliably ascertained by examining the statute's words." *People v Chaney*, 327 Mich App 586, 589; 935 NW2d 66 (2019). "A statutory term or phrase cannot be viewed in isolation, but must be construed in accordance with the surrounding text and the statutory scheme." *McQueer v Perfect Fence Company*, 502 Mich 276, 286; 917 NW2d 584 (2018) (quotation marks and citation omitted). "A court must presume that each word has some meaning and should avoid constructions that render a part of the statute surplusage or nugatory." *People v Morrison*, 328 Mich App 647, 651; 939 NW2d 728 (2019). (quotation marks and citation omitted). "Nothing should be read into a statute that is not within the manifest intention of the Legislature as derived from the language of the statute itself." *People v Clark*, 274 Mich App 248, 252; 732 NW2d 605 (2007).

(a) An individual who seeks medical assistance for himself or herself or who requires medical assistance and is presented for assistance by another individual if he or she is incapacitated because of a drug overdose or other perceived medical emergency arising from the use of a controlled substance or a controlled substance analogue that he or she possesses or possessed in an amount sufficient only for personal use and the evidence of his or her violation of this section is obtained as a result of the individual's seeking or being presented for medical assistance.

Additionally, MCL 333.7403(7)(a) provides:

"Drug overdose" means a condition including, but not limited to, extreme physical illness, decreased level of consciousness, respiratory depression, coma, mania, or death, that is the result of consumption or use of a controlled substance or a controlled substance analogue or a substance with which the controlled substance or controlled substance analogue was combined, *or that a layperson would reasonably believe to be a drug overdose that requires medical assistance.* [Emphasis added.]

As a preliminary matter, we note the prosecution does not argue that the trial court erred in its conclusion that the drugs were for personal use, contra *People v Morrison*, 328 Mich App 647, 650-655; 939 NW2d 728 (2019), nor in its conclusion that defendant was incapacitated when his mother called 911, contra *People v Meeker (On Remand)*, 340 Mich App 559, 565-570; 986 NW2d 622 (2022).

Instead, the prosecution makes two arguments on appeal. First, the prosecution argues that defendant was not incapacitated due to a drug overdose, because he only admitted to drinking alcohol. Putting aside the trial court's conclusion that defendant had consumed a controlled substance, the prosecution's argument is inconsistent with the statute. The statute includes a definition of "drug overdose" which refers to a state of incapacity as one either caused by consumption of a controlled substance or "that a layperson would reasonably believe to be a drug overdose that requires medical assistance." MCL 333.7403(7)(a). Thus, when considering whether or not defendant suffered a drug overdose, the question is whether his condition, at the time 911 was called, was such "that a layperson would reasonably believe to be a drug overdose that requires medical assistance." *Id.* Indeed, MCL 333.7403(3)(a) provides protections in cases where the defendant was overdosing, but also protects defendants in situations where there was a "perceived medical emergency." This language necessarily implicates the reasoning of the caller. The Legislature would not have used such language if the requisite inquiry was whether medical treatment was needed after first responders arrived, because first responders would presumably be able to actually determine whether an emergency was happening, and would not need to rely on any "perception." The question, then, is not what the paramedics concluded when they evaluated defendant, but whether his mother's conclusion at the time she called 911 that he was overdosing was reasonable. Given defendant's condition at the time and his history of drug use, the trial court properly concluded that the requirements of MCL 333.7403(3)(a) had been met as the reasonableness of his mother's perception had not been rebutted.

Second, the prosecution argues that defendant did not "require" medical assistance. This, however, is a red herring. The prosecution's position appears to be that, if a person does not

actually receive some form of medical treatment, they do not qualify for protection from criminal liability under MCL 333.7403(3)(a). However, the question is not what treatment the person ultimately received. Rather, it is whether, at the time assistance was sought, they required medical assistance because of a drug overdose "or other perceived emergency arising from the use of a controlled substance." MCL 333.7403(3)(a). The prosecution seeks to shift the focus from what caused the 911 call to the ultimate outcome of the 911 call. The statute provides that it applies when "the evidence of [the defendant's] violation of this section is obtained as a result of the individual's seeking or being presented for medical assistance." MCL 333.7403(3)(a). The focus, then, is on defendant's condition when the medical help was summoned, not on the ultimate outcome or treatment received. Moreover, the statute does not require any particular form of assistance or treatment. In this case, paramedics came to the scene and checked defendant's vital signs. The prosecution does not explain how this does not constitute medical assistance.

Clearly, given the evidence, when defendant's mother called 911, defendant "require[d] medical assistance." MCL 333.7403(3)(a). He was in a state of unconsciousness, or near unconsciousness, had pinpoint pupils, and could not be roused. A person who cannot be roused despite having his chest repeatedly struck is a person reasonably considered to require medical assistance. The fact that, after evaluation, defendant refused treatment and was relatively alert does not change this fact. The statute only requires the person "requires medical assistance" when he is presented for assistance, not that he actually "receive medical assistance," and, in any event, defendant was evaluated by paramedics, an action that qualifies as "medical assistance."

The statute also recognizes that the determination whether to summon help is a judgment that will be made based on the perception of laypersons and not an after-the-fact determination based on whether or not medical intervention proved necessary. As noted, it speaks to incapacity because of a drug overdose "or other perceived medical emergency." *Id.* It does not require that the situation ultimately be a medical emergency. Instead, it requires that the person summoning help reasonably perceived that there was a medical emergency at the time. This is consistent with the exculpatory text of the statute, i.e. to assure that potential prosecution for drug possession does not dissuade drug users or those with them from calling for medical attention.

As noted earlier, our reasoning is further bolstered by the final part of MCL 333.7403(3)(a), which exempts individuals from prosecution if the evidence was "obtained as a result of the individual's *seeking or being presented for* medical assistance." (Emphasis added). Reading the requirement set forth by the prosecution that the individual actually needed to have *received* medical treatment would render this language nugatory. *Morrison*, 328 Mich App at 651. The prosecution's argument effectively requires that the individual actually receive medical treatment for the statute to take effect. Such judicial reconstruction of statutes is not permitted when the language of the statute is clear. See *id.*; *People v Clark*, 274 Mich App 248, 252; 732 NW2d 605 (2007).[4]

---

[4] We do not interpret this definition to incorporate any good-faith analysis into MCL 333.7403(3)(a). *Meeker*, 340 Mich App at 567-568. There is no reference to good faith in the MCL 333.7403(3)(a). It appears only in subsection (b), which is not relevant here. Thus, the only

Put simply, the focus of MCL 333.7403(3)(a) is on the condition of the defendant when the decision to call 911 was made. In this case, defendant was unresponsive and had a history of drug use. These two factors would permit a reasonable person standing in the shoes of defendant's mother to believe defendant was suffering from an overdose, and to call 911. The fact that defendant eventually woke up is irrelevant. Defendant's circumstances fall squarely within the protections afforded by MCL 333.7403(3)(a).

Affirmed.

/s/ Douglas B. Shapiro
/s/ James Robert Redford
/s/ Christopher P. Yates

---

issue is whether, at the time medical assistance is sought, the situation was one "a layperson would [have] reasonably believe[d] to be a drug overdose or other perceived medical emergency from the use of a controlled substance." MCL 333.7403(7)(a).